IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNION PROPERTIES LLC,<br>　　　Relator, | §<br>§<br>§ | |
| v. | § | Civil Action No. A-11-CA-47 |
| | § | |
| TODD EUGENE CAUTHORN dba<br>TEXAN NUT SHELLER COMPANY,<br>　　　Defendant. | §<br>§<br>§ | JURY TRIAL DEMANDED |

## RELATOR'S' ORIGINAL COMPLAINT FOR FALSE PATENT MARKING

### A. Parties

1.　　Relator, Union Properties LLC ("Union Properties"), is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business in Austin, Texas.

2.　　Defendant, Todd Eugene Cauthorn, doing business as Texan Nut Sheller Company ("Cauthorn"), is an individual and a citizen of the State of Texas. Defendant may be served with process at 3053 Red Bluff Circle, San Angelo, Texas 76904.

### B. Jurisdiction

3.　　This Court has jurisdiction over the lawsuit because the action arises under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq*. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4.　　This Court has general and specific personal jurisdiction over Defendant by virtue of, *inter alia*, Defendant's persistent and continuous contacts with this District, including: (1) active and regular conduct of business during the relevant time period in this District; (2) deriving substantial revenue from goods and/or services provided to individuals and other

entities in Texas and in this District; (3) offering for sale and selling falsely-marked products in this District.

### C.  Venue

5. Venue is proper in this District under 28 U.S.C. §§ 1391(b), 1391(c), and 1395(a).

### D.  Facts

6. This is an action for false patent marking under 35 U.S.C. § 292, which provides that any person may sue to recover the civil penalty for false patent marking.  Relator brings this *qui tam* action on behalf of the United States of America.

**False Marking by Defendant Cauthorn**

7. Defendant has made, used, sold, and/or offered for sale in the United States and/or imported into the United States the Texan Nut Sheller.  (*See* Ex. 1, Texan Nut Sheller; Ex. 2, NUT SHELLER, http://www.texannutsheller.com/nutsheller.html (last visited on Jan. 16, 2011).

8. Defendant marks and/or has marked, affixes and/or has affixed, and/or uses and/or has used in advertising in connection with the Texan Nut Sheller (the "Falsely-Marked Product") three expired patents—U.S. Patent No. 2,376,496 ("the '496 Patent"), 2,651,342 (the '342 Patent"), and 3,395,421 ("the '421 Patent").

9. As illustrated in Exhibit 1, Defendant Cauthorn marked the Texan Nut Sheller with the '496, '342, and '421 Patents.

10. A true and correct copy of U.S. Patent No. 2,376,496 ("the '496 Patent") is attached as Exhibit 3.

11. The '496 Patent, entitled "Burner Control Apparatus" was filed on August 13, 1941, and issued on May 22, 1945.  (Ex. 3, '496 Patent.)

12. The '496 Patent expired on or about May 22, 1962, pursuant to 35 U.S.C. § 154(c).

13.     A true and correct copy of U.S. Patent No. 2,651,342 ("the '342 Patent") is attached as Exhibit 4.

14.     The '342 Patent, entitled "Nut Sheller," was filed on August 22, 1949, and issued on September 8, 1953.  (Ex. 4, '342 Patent.)

15.     The '342 Patent expired on or about September 8, 1970, pursuant to 35 U.S.C. § 154(c).

16.     A true and correct copy of U.S. Patent No. 3,395,421 ("the '421 Patent") is attached as Exhibit 5.

17.     The '421 Patent, entitled "Lobster and Crab Claw Shell Cracking Tool," was filed on December 7, 1965, and issued on August 6, 1968.  (Ex. 5, '421 Patent.)

18.     The '421 Patent expired on or about August 6, 1985, pursuant to 35 U.S.C. § 154(c).

19.     Defendants falsely marked the Falsely-Marked Product after the expiration of the '496, '342, and '421 Patents (collectively the "Expired Patents").

20.     Moreover, the '496 Patent discloses a safety apparatus for preventing the operation of a burner when the flame supervisory apparatus is in an unsafe condition. (*See* Ex. 3, '496 Patent at col. 1, ll. 1–4.)  Clearly, the single claim of the '496 Patent relates to a gas burner apparatus, rather than a nut sheller. (*See id.* at col. 5, l. 24–col. 6, l. 26.)

21.     Since Defendant's Texan Nut Sheller never could have been protected by the '496 Patent, Defendant falsely marked the Falsely-Marked Product.

22.     Defendant Cauthorn is a sophisticated individual doing business as Texan Nut Sheller Company.  Texan Nut Sheller Company and its predecessors has been manufacturing and selling nut shellers to individuals, wholesalers, and retailers throughout the world, including this

3

District, since approximately 1953. (*See* Ex. 6, About Us, http://www.texannutsheller.com/aboutus.html (last visited on Jan. 11, 2011); *see also* Ex. 1 ("World's Best Sheller!").) Cauthorn actively markets the Falsely-Marked Product in this District at Dooley's 5-10 & 25 Store, Inc., 131 E. Main St., Fredericksburg, Texas 78624, where the Falsely-Marked Products can be purchased by the general public. Texan Nut Sheller Company has many years of intellectual property experience, and the company was licensed to make, use, sell, offer to sell in the United States, and/or import into the United States the Falsely-Marked Product under three U.S. Patents. (*See* Ex. 6; Ex. 3, '342 Patent; Ex. 4, '421 Patent, Ex. 7, U.S. Patent No. 2,376,469 ("the '469 Patent"). Defendant Cauthorn's intellectual property is a valuable asset to Cauthorn.

23. Defendant knew that expired patents do not cover any product.

24. Defendant knew that the Expired Patents were expired. Moreover, given the filing and issue dates of the Expired Patents, Defendants did not have a reasonable belief that the Expired Patents were unexpired.

25. Defendant knew that the Expired Patents did not cover the Falsely-Marked Product.

26. The Falsely-Marked Product could have easily been made without falsely marking it with the Expired Patents.

27. Defendant knew that it was a false statement to mark the Falsely-Marked Product with the Expired Patents.

28. Defendant did not have, and could not have had, a reasonable belief that the Falsely-Marked Product was properly marked.

29. Defendant marked the Falsely-Marked Product for the purpose for deceiving the public into believing that the product was patented and to thwart competition.

**Injury to the United States of America**

30. Defendant's practice of false marking is injurious to the United States.

31. Defendant's false marking alleged in the preceding paragraphs caused injury to the sovereignty of the United States arising from violations of federal law, specifically, the violation of 35 U.S.C. § 292. The United States has conferred standing on "any person," including the Relator, as the United States' assignee of the claims in the Complaint to enforce 35 U.S.C. § 292.

32. Defendant's false marking alleged in the preceding paragraphs caused proprietary injury to the United States, which, together with 35 U.S.C. § 292, would provide another basis to confer standing on Relator as the United States' assignee.

33. The marking and false marking statutes exist to provide the public notice of patent rights. Congress intended the public to rely upon marking as a ready means of discerning the status of intellectual property embodied in an article of manufacture or design, such as in Defendant's Falsely-Marked Product.

34. Federal patent policy recognizes an important public interest in permitting full and free competition in the use of ideas that are, in reality, a part of the public domain, such as those disclosed in the Expired Patents.

35. The public's interest in preventing false marking was so great that the United States enacted a statute that sought to encourage private parties to enforce the statute. By permitting members of the public to bring *qui tam* suits on behalf of the government, Congress authorized private persons, such as Relator, to help control false marking.

36. Defendant's false marking alleged in the preceding paragraphs deter innovation and stifle competition in the marketplace for at least the following reasons: (1) if an article that is within the public domain is falsely marked, potential competitors may be dissuaded from entering the same market; (2) false marks may deter scientific research when an inventor sees a mark and decides to forego continued research to avoid possible infringement; and (3) false marking can cause unnecessary investment in design around or costs incurred to analyze the validity or enforceability of a patent whose number has been marked upon a product with which a competitor would like to compete.

37. Defendant's false marking alleged in the preceding paragraphs misleads the public into believing that the Expired Patents gives Defendant control of Defendant's Falsely-Marked Product (as well as similar products), which places the risk of determining whether Defendant's Falsely-Marked Product and similar products are controlled by the Expired Patents on the public, thereby increasing the cost to the public of determining who, if anyone, in fact controls the intellectual property embodied in Defendant's Falsely-Marked Product.

38. Thus, in each instance where a representation is made that Defendant's Falsely-Marked Product is protected by the Expired Patents, a member of the public desiring to participate in the market for products similar to Defendant's Falsely-Marked Product must incur the cost of determining whether the involved patents are valid and enforceable. Failure to take on the costs of a reasonably competent search for information necessary to interpret each patent, investigation into prior art and other information bearing on the quality of the patents, and analysis thereof can result in a finding of willful infringement, which may treble the damages an infringer would otherwise be required to pay.

39. Defendant's false marking alleged in the preceding paragraphs also creates a misleading impression that Defendant's Falsely-Marked Product is technologically superior to previously available products, as articles bearing the term "patent" may be presumed to be novel, useful, and innovative.

40. Every person or company in the United States is a potential entrepreneur regarding the apparatus and methods described in the Expired Patents. Moreover, every person or company in the United States is a potential competitor with respect to Defendant's Falsely-Marked Product that is marked with the Expired Patents.

41. Each of Defendant's Falsely-Marked Products, is likely to, or at least has the potential to, discourage or deter each person or company, which view such marking from commercializing a competing product, even though the Expired Patents are expired and inapplicable.

42. Defendant's false marking alleged in the preceding paragraphs has quelled competition regarding similar products to an immeasurable extent, thus, causing harm to the United States in an amount that cannot be determined readily.

43. Defendant's false marking alleged in the preceding paragraphs constitutes wrongful and illegal advertisement of a patent monopoly that does not exist and, as a result, has resulted in increasing, or at least maintaining, the market power or commercial success of Defendant's Falsely-Marked Product.

44. Each individual false marking is likely to harm, or at least potentially harm, the public. Thus, each such false marking is a separate offense under 35 U.S.C. § 292(b).

45. For at least the reasons stated in the preceding paragraphs, Defendant's false marking caused injuries to the United States arising from violations of federal law and has caused proprietary injuries to the United States.

### E.  Count 1 – False Marking

46. Relator incorporates all of the preceding paragraphs as if fully set herein. Defendant has violated 35 U.S.C. § 292 by falsely marking the Falsely-Marked Product for the purpose for deceiving the public.

### F.  Jury Demand

47. Relator asserts its rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

### G.  Prayer

48. For these reasons, Relator requests a judgment against Defendant for the following:

   a. A judgment in favor of Relator that Defendant has violated 35 U.S.C. § 292 by falsely marking products with knowledge that the patents have expired or are otherwise inapplicable for the purpose of deceiving the public;

   b. An accounting of total unit sales, per unit sales price, per unit revenue, gross revenue, per unit profit, and gross profit for any falsely-marked articles;

   c. A monetary award pursuant to 35 U.S.C. § 292 in the form of a civil fine of $500 per falsely-marked article, or an alternative reasonable amount determined by the Court taking into consideration the sales, price, the total revenue and gross profit derived from the sale of falsely-marked articles

        and the degree of intent to falsely mark the articles, one-half of which shall be paid to the United States and the other half to the Relator;

d.     A judgment declaring that this case is "exceptional" under 35 U.S.C. § 285; and awarding Relator its costs, including reasonable attorney's fees, in bringing and maintaining this lawsuit;

e.     An injunction ordering Defendants, and their officers, agents, servants, employees, attorneys, licenses, successors, and assigns and those in active concert or participation with any of them, to cease all existing acts of false marking within 90 days and from committing any new acts of false marking;

f.     An award of pre-judgment and post-judgment interest on any monetary award;

g.     Costs of court;

h.     All other relief, at law and in equity, which this Court deems appropriate.

        Respectfully submitted,

        /s/ James N. Willi
        James N. Willi
        Texas Bar No. 00795719
        jwilli@willilawfirm.com
        Tracy J. Willi
        Texas Bar No. 00784633
        twilli@willilawfirm.com
        Willi Law Firm, P.C.
        9600 Escarpment Blvd.
        Ste. 745, PMB 34
        Austin, TX 78749-1983
        Tel. (512) 288-3200
        Fax (512) 288-3202

        ATTORNEYS FOR RELATOR,
        UNION PROPERTIES LLC